

U.S. Department of Justice

*United States Attorney  
Eastern District of New York*

HDM:DAS  
F. #2021R00122

*271 Cadman Plaza East  
Brooklyn, New York 11201*

August 7, 2023

By ECF

The Honorable Brian M. Cogan  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

        Re:    United States v. Frantz Simeon  
                Criminal Docket No. 21-479 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in connection with the defendant's sentencing, currently scheduled for August 16, 2023. For the reasons set forth below, a sentence within the applicable United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 24 to 30 months' imprisonment, as calculated in the March 27, 2023 Presentence Investigation Report (the "PSR"), is appropriate. The Court should also order restitution in the amount of $202,415, as stipulated in the parties' plea agreement. See PSR ¶ 26.

I.      Background

      As described in the PSR, in or around and between February 2019 and December 2020, the defendant orchestrated a fraudulent scheme in which he enticed victims to invest with his company, First Black Enterprises ("FBE"). The defendant told his victims that the money sent to FBE would be invested in two ways: (1) through proprietary investments that would yield 10% monthly interest; and (2) in purchasing foreclosed homes that could be sold at a substantial profit. See PSR ¶ 5. The defendant advertised these investments as risk-free, falsely claiming, among other things, that he had over twenty years' experience in investing, that the principal was returnable at any time with thirty-days' notice, and that FBE maintained an insurance program that would guarantee the principal. Id. ¶¶ 8-9, 12.

      The defendant relied on his membership in and close ties with the Haitian-American community to recruit investors, and he was ultimately able to obtain at least $350,000 in investments. PSR ¶ 6. After victims invested with him and his company, the defendant did not invest the money at all, instead operating a fraudulent scheme in which he paid earlier investors their monthly interest payments using the money contributed by later investors. See id.

¶¶ 10, 14, 22. The money that was not mailed to victims as purported investment returns was spent by the defendant on a host of personal expenses, including scores of checks written to himself and family members with subject lines related to travel, birthday gifts, rent payments and loans. See id. ¶ 22. The defendant also withdrew a substantial amount of investor funds to purchase a car for his daughter and made over $60,000 in cash withdrawals. Id. There is no evidence that the defendant invested any money contributed by the investor-victims in any security, interest-bearing account, property or other investment vehicle that would reasonably be calculated to generate legitimate returns. See id. ¶ 23.

As is the case with any Ponzi-type scheme, the money eventually ran out. By late 2020, investors stopped receiving their monthly interest payments. Other than the monthly checks that were paid, unknowingly, with other investors' money, the victims lost the entirety of their investments, and they sustained a total of over $200,000 in losses. PSR ¶¶ 23, 26. None of the investors obtained titles in real property, earned a profit on their investments or received full repayment of their principal investment. Id.

On February 8, 2023, the defendant pleaded guilty before United States Magistrate Judge Marcia M. Henry to Count One of the Indictment, which charged the defendant with mail fraud under 18 U.S.C. § 1341. PSR ¶ 1. The Court accepted the defendant's guilty plea on February 13, 2023. See ECF No. 21.

## II. Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the PSR, which the defendant does not dispute (see Aug. 2, 2023 Letter ("Def. Mem.") at 1) and is the same calculation to which he stipulated in the plea agreement:

| | | |
|---|---|---:|
| | Base Offense Level (U.S.S.G. § 2B1.1(a)(1)) | 7 |
| Plus: | Loss in excess of $150,000 (U.S.S.G. § 2B1.1(b)(1)(F)) | +10 |
| Plus: | Substantial financial hardship to one or more victims (U.S.S.G. § 2B1.1(b)(2)(iii)) | +2 |
| Minus: | Acceptance of responsibility (U.S.S.G. §§ 3E1.1(a) and (b)) | -3 |
| | Total: | 16 |

PSR ¶¶ 29-40. Based upon a total offense level of 16 and a criminal history category of II, the Guidelines advise a range of imprisonment of 24 to 30 months. See id. ¶¶ 41-44, 86.

## III. Argument

The government respectfully submits that a sentence within the advisory Guidelines range of 24 to 30 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted); see also United States v. Sampson, 898 F.3d 287, 313 (2d Cir. 2018).

Title 18, United States Code, Section 3553(a) lists numerous factors that a Court "shall consider" in imposing a sentence. These factors include, inter alia, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(2).

The defendant's offense here was unquestionably serious. The defendant's victims were largely hardworking immigrants, a number of whom made the mistake of trusting the defendant with significant portions of their life savings. The defendant preyed upon his own community, taking advantage of the fact that his victims would be more likely to trust someone like themselves. The defendant's victims were also devastated by the losses they sustained. For example, after losing his investment in FBE, one of the victims and his family faced eviction. See June 2, 2023 Addendum to the Presentence Report (the "Addendum") at 1-2. Another victim is "still in pain" and has experienced physical symptoms, such as hair loss and skin problems, due to the "stress and depression" of being swindled. Id. at 2. The immorality of the defendant's conduct thus merits a substantial punishment.

This was also a brazen and blatant fraud. Rather than invest a single dollar of his victims' investments in anything that could be reasonably calculated to generate returns, the defendant operated a Ponzi-like scheme in which he paid victims their interest with other victims' investments. The defendant repeatedly lied to his victims to get them to increase their investments, plying them with empty promises while knowing that he was constructing a financial house of cards. And after soliciting hundreds of thousands of dollars in investments from members of his own community, the defendant placed the funds in an account that he used as a personal slush fund, buying gifts for family members and withdrawing heaps of cash. A Guidelines sentence would provide just punishment for such an offense.

It is also important that the sentence afford specific deterrence. Defense counsel claims that the defendant's "entrepreneurial ambitions seem to begin with the best of intentions," Def. Mem. at 2, but the defendant's conduct here was corrupt from the start. His lies were calculated, designed to provide his victims with false security that their investments were safe and that he was a responsible steward. As noted in the PSR, the defendant guaranteed a 10% monthly return on investment and touted an insurance program and the ability to withdraw the principal on thirty-days' notice. PSR ¶¶ 8, 12. The fact that the defendant was able to make such claims knowing that they were false suggests that he is a committed fraudster. The defendant also targeted his lies to his audience and preyed on their vulnerabilities, enticing an

investment in the foreclosure scheme from at least one individual whom he knew needed a personal residence. Id. ¶ 20. This sort of cunning behavior must be deterred.

Another of the false claims that the defendant made to his investors was that he had twenty years of investment experience. Id. ¶ 9. Not only was this a lie, but the defendant was actually operating a different fraudulent scheme from approximately April 2006 through February 2011: creating and operating nursing "schools" that were not, in fact, schools at all. PSR ¶ 43. The defendant and others promised prospective nursing students that these schools were certified to provide the prerequisite training for the nursing entrance exam. See id. It was only when these unsuspecting students actually sought to take the exam that they learned, after spending thousands of dollars, that their education was bogus and they were not eligible to take the exam at all. Id. At the most basic level, the defendant conspired with others to steal from men and women who wanted to become nurses. See id. When viewed in conjunction with the instant case, the defendant has a pattern of deceiving well-meaning individuals in order to personally profit. A Guidelines sentence here would adequately deter the defendant from committing such crimes in the future.[1]

The sentence must also provide general deterrence. The defendant's scheme was remarkably easy to perpetrate—a straightforward affinity fraud. These types of schemes can be difficult to detect and are extremely harmful to the communities in which they are committed. Because of the difficulty inherent in investigating crimes within immigrant communities, there is a degree of impunity among fraudsters like the defendant who victimize these easily targeted individuals. A substantial punishment is necessary to ensure that future fraudsters motivated purely by self-interest do not view a similar crime as "a game worth playing" and to communicate the risks of engaging in such conduct. United States v. Goffer, 721 F.3d 113, 132 (2d Cir. 2013) (quotation marks and citation omitted); see also id. (explaining that white-collar crimes frequently "require[] high sentences to alter [the] calculus" of others who might be tempted to participate in similar wrongdoing). A Guidelines sentence is therefore appropriate.

---

[1] The defendant served approximately 15 months in prison for his nursing school scheme conviction. See PSR ¶ 43. The government respectfully submits that a sentence of that length clearly did not deter the defendant from future criminal conduct. This further supports the argument that a Guidelines sentence of 24 to 30 months' imprisonment is warranted here.

IV.        Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable Guidelines range of 24 to 30 months' imprisonment and order the defendant to pay restitution in the agreed-upon amount of $202,415.

                Respectfully submitted,

                BREON PEACE
                United States Attorney

By:    /s/ Dylan A. Stern
        Dylan A. Stern
        Assistant U.S. Attorney
        (718) 254-6213

cc:       Clerk of the Court (BMC) (by ECF and email)
          Michael Padden, Esq. (by ECF and email)
          Meghan Wing, United States Probation Officer (by email)